UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| CHAD LEROY LISDAHL, | CIVIL ACTION |
| PLAINTIFF | |
| | NO. |
| VERSUS | |
| | SECTION " " |
| MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, D/B/A MAYO MEDICAL TRANSPORT, A/K/A GOLD CROSS AMBULANCE, AND DAVID B. JOHNSON, INDIVIDUALLY, | |
| DEFENDANTS. | MAG. DIV. ( ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES **CHAD LEROY LISDAHL** ("Lisdahl"), who for his Complaint respectfully avers that:

1.

Mr. Lisdahl, plaintiff herein, is a person of the age of majority and domiciled within the County of Douglas, City of Superior, in the State of Wisconsin.

2.

Made defendant herein is **MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, D/B/A MAYO MEDICAL TRANSPORT, A/K/A GOLD CROSS AMBULANCE**, ("Mayo Clinic"), a non-profit business entity formed under the laws of the State of Minnesota, licensed to and doing business in the State of Minnesota with a principal place of business in Rochester, Minnesota, and with a registered agent in Rochester, Minnesota.

3.

Made additional defendant herein is **DAVID B. JOHNSON** ("Johnson") a natural

person domiciled within the County of Duluth, State of Minnesota.

4.

This Honorable Court has jurisdiction over this matter pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA") 38 U.S.C. § 4301, et seq., specifically 38 U.S.C. § 4323(b)(3). This Honorable Court has concurrent and pendant jurisdiction over this matter pursuant to Minnesota Statutes Annotated § 192.261. Alternatively, this Honorable Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331.

5.

Venue is proper in this Honorable Court pursuant to the provisions of USERRA, 38 U.S.C. § 4323(c)(2). Alternatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6.

Mayo Clinic first employed Lisdahl on October 16, 1998, as a convalescent services employee.

7.

At all times relevant to this action, Lisdahl was and remains, a non-career enlisted man in the United States Marine Corps currently holding the rank of Sergeant.

8.

In June of 2002, Lisdahl gave notice to Mayo Clinic manager Jim Stauber that he had enlisted in the United States Marine Corps and would be taking a leave of absence to attend boot camp, military occupational specialty training, and likely deployment to the Iraq Theater of War for a period of time.

9.

Manager Stauber informed Mayo Clinic's Director of Human Resources Darla Oelkers and Oelkers then placed Plaintiff on military leave effective October 2, 2002.

10.

Lisdahl reported for boot camp in San Diego, California on October 8, 2002, graduating on January 3, 2003. Following a brief period of leave, he was ordered to infantry training school on January 14, 2003, and graduated March 11, 2003, with a meritorious promotion to Private First Class. After a brief period of leave, Lisdahl was assigned to the First Light Armored Reconnaissance Battalion as a crew member and deployed to the Iraq Theater of War on March 30, 2003.

11.

By April 1, 2003, Lisdahl had joined his Marine Armored Reconnaissance Unit south of Baghdad where he spent the next two months of his first tour in Iraq re-deploying to the United States on May 28, 2003. Lisdahl was promoted to Lance Corporal in November of 2003, and then meritoriously promoted again to the rank of Corporal in December of 2003.

12.

Lisdahl's Armored Reconnaissance Unit received re-deployment orders back to Iraq for his second tour in February 2004 reporting to Al Asad Air Base in Anbar Provence and later serving in Al Q'aim. Lisdahl and his unit participated in the first battle of Fallujah in April of 2004. Lisdahl's Armored Reconnaissance Unit suffered many casualties during this tour and Lisdahl was advanced to the gunner position on his light armored vehicle through the attrition of those more senior and more experienced than he who were killed or wounded in action. On October 9, 2004, Lisdahl's unit re-deployed back to the United States.

13.

By August of 2005, Lisdahl was now a vehicle commander of one of his unit's light armored vehicles and served in that position when his unit received deployment orders for their third combat tour in Iraq in August of 2005. Lisdahl was promoted to Sergeant in October of 2005 and deployed again to Anbar Province participating in

Operation Steel Curtain and operating out of Al'Qaim until March 9, 2006, when Lisdahl re-deployed back to the United States with his Marine Battalion.

14.

Lisdahl was awarded a Navy Achievement Medal and the Combat Action Ribbon for his services in Iraq as a team leader, gunner and vehicle commander during three tours of duty. Lisdahl also suffered physical injury to both his knees and required arthroscopic surgery to remove plaica and to repair torn meniscus in both knees during surgery received at Naval Hospital Camp Pendleton, California, in May and June of 2006, before his discharge from active duty.

15.

While recovering from arthroscopic surgery to both knees, Lisdahl notified Mayo Clinic's Human Resources Director Darla Oelkers that he was ready to come back to work at Mayo Clinic in the position he had been employed at when he was placed on military leave on October 2, 2002.

16.

Lisdahl had received his training as a paramedic through an educational institute known as Emergency Training Associates which was accredited by Hibbing Community College in 1999. The paramedic training program Lisdahl participated in was fourteen (14) months in length and Lisdahl completed it in June of 1999 subsequent to commencing the program in April of 1998.

17.

In June of 1999, Lisdahl passed the certification test qualifying him as a nationally registered paramedic and met all Minnesota state paramedic requirements entitling him to be employed by Mayo Clinic as a non-status paramedic in June of 1999.

18.

Between June of 1999 and December of 1999, Lisdahl was evaluated by Mayo Clinic's field training officers and critiqued by paramedic partners during "911" calls for

his proficiency as a trained paramedic. All of Lisdahl's evaluations were exceptional and Lisdahl was reclassified as a status paramedic in December of 1999 by Mayo Clinic.

19.

Prior to taking military leave to serve his country as a U.S. Marine in a Light Armored Reconnaissance crew, Lisdahl had spent two years, nine months as a status level paramedic with his employer, Mayo Clinic, and had worked as a paramedic for over four years and completed a fourteen-month accredited paramedic training program and had been closely evaluated by Defendant employer Mayo Clinic for six months prior to being classified as a status paramedic.

20.

During Lisdahl's second tour in Anbar Province, Iraq, he treated multiple shrapnel wounds on his fellow Marines from improvised explosive device attacks and treated a life-threatening scalp laceration of a Marine in a vehicle directly in front of his which had been flipped up and over by an improvised explosive device, nearly killing the Marine treated by Lisdahl.

21.

Lisdahl was known by the Officers and Marines in his unit as a school-trained paramedic with exceptional life-saving skills which exceeded the skills of the Navy Corpsman assigned to their Marine unit for battlefield medical care.

22.

While in the Marine Corps between October 2, 2002 and October 7, 2006, Lisdahl maintained his Minnesota paramedic certifications. Lisdahl recertified in advanced cardiac life support, cardiopulmonary resuscitation, and took all on-line continuing education required by the State of Minnesota to maintain his state-regulated paramedic status while on active duty with the Marines.

23.

Upon returning to Defendant employer Mayo Clinic's employ in September of 2006, Darla Oelkers informed Lisdahl that he would have one year to re-certify as a nationally registered paramedic. Lisdahl's understanding was that he was already a nationally registered paramedic and had been since June of 1999.

24.

Upon reemployment with Defendant Mayo Clinic, Lisdahl was demoted to a non-status paramedic and was required to be critiqued by less experienced partners on "911" calls and was assigned to a field training officer for six months for close observation and evaluation.

25.

Prior to being allowed to return to Defendant's employ, Lisdahl was required to conduct a physical screening test which was conducted the first week of September of 2006 for which Defendant employer has refused to compensate the Plaintiff.

26.

Plaintiff completed his physical screening test and his evaluation between September 20, 2006 and March 1, 2007, to include numerous written critiques by fellow paramedics with extraordinary results. Lisdahl had no deficiencies in any paramedic skill with regard to any evaluation thrust upon him by Defendant Mayo Clinic while in his demoted non-status paramedic reemployment position.

27.

In March of 2007, the field training officer assigned to evaluate Lisdahl, recommended that Lisdhal be reclassified as a "status" paramedic, stating that Lisdahl's paramedic skills were "where they were before he left for military duty" with the Marines. Lisdahl's manager, Defendant David B. Johnson, responded that if Lisdahl couldn't pass the national recertification test, that Lisdahl may not have a future job with the Mayo Clinic.

28.

Following Lisdahl's reclassification as a status paramedic and subsequent to his comprehensive evaluation by Mayo Clinic as a condition of reemployment, Defendant David Johnson took steps to force Lisdahl to quit his job with Mayo Clinic or be evaluated as unsuitable for continued employment.

29.

Defendant David Johnson harassed Lisdahl in front of witnesses on April 23, 2007, and continued to push, annoy, make uncomfortable, and harass Lisdahl in an effort to force Lisdahl out of employment with the defendant business entity.

30.

On May 16, 2007, Lisdahl informed Human Resources Director Darla Oelkers that he would be taking medical leave on the advice of a physician due to a "medical disability".

31.

Oelkers, after obtaining a statement from Lisdahl's physician, placed Lisdahl on medical leave for Lisdahl's confidential medical disability as indicated by Lisdahl's physician.

32.

On June 1, 2007, Lisdahl filed a employment claim with the U.S. Department of Labor regarding the violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, et seq., for the actions of Defendants Mayo Clinic and David B. Johnson. The Department of Labor began its investigation of Lisdahl's claims in June of 2007.

33.

Upon information and belief, Lisdahl's active military service from October 2, 2002 through August 31, 2006, was in whole or in part, known and considered by Mayo Clinic and Johnson prior to denying him similar status and seniority in his reemployment

request that Lisdahl had enjoyed prior to enlisting to serve his country in active military service.

34.

Lisdahl received an Honorable Discharge following his four-year enlistment with the Marines between October 2002 and October 2006.

35.

Lisdahl spent less than four years on military leave with Defendant Mayo Clinic prior to the filing of this Complaint.

36.

The facts alleged in Paragraphs 1 through 35 constitute violations of both the provisions of USERRA, 38 U.S.C. § 4301, et seq., including, but not limited to, 38 U.S.C. §§ 4311, 4312, 4313, and 4316, and Minnesota Revised Statute Annotated § 192.61.

37.

Mayo Clinic and David B. Johnson's actions in this matter were a willful violation in that Mayo Clinic and/or David B. Johnson knew or showed reckless disregard for the matter of whether their individual or collective conduct was prohibited by the provisions 38 U.S.C. § 4301, et seq., such that liquidated damages are legally appropriate.

38.

Plaintiff seeks injunctive relief from this Court, in addition to money damages, requiring Defendant Mayo Clinic to rescind its requirement that Plaintiff be required to re-take the National Registered paramedics exam because has already taken and passed the exam, operating as an evaluated paramedic for four years prior to joining the Marines, saved lives on the battlefield as a paramedic while in the Marines, maintained the currency of his Minnesota paramedic status since obtaining said status in 1999, then was closely re-evaluated and critiqued while in the conduct of responding to "911" emergency calls as a registered paramedic as the records maintained by the

Defendant employer reflect that Plaintiff has no deficiencies in any paramedic evaluated skill set.

39.

Plaintiff, **CHAD LEROY LISDAHL**, hereby demands a trial by jury in the above-captioned matter as provided by the Seventh Amendment to the United States Constitution.

**WHEREFORE, CHAD LEROY LISDAHL** prays that due proceedings be had and that there be judgment herein in favor of **CHAD LEROY LISDAHL** and against **MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, D/B/A MAYO MEDICAL TRANSPORT, A/K/A GOLD CROSS AMBULANCE** and **DAVID B. JOHNSON,** Defendants, for such injunctive relief as the Court should deem reasonable and proper, including the waiving or revocation of Mayo Clinic's internal requirement that Plaintiff recertify as a Nationally Registered paramedic as a condition of employment and for such sums as the Court should deem reasonable and proper including payment for Lisdahl's physical inventory in September of 2006, which remains uncompensated, compensation for failure to return Lisdahl to his appropriate seniority and status when returning from active military duty in September of 2006 to a position with like seniority, status and pay as Lisdahl enjoyed prior to volunteering for active military service to include accrued vacation credits, matching employment retirement credits, differential pay, back pay, liquidated damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest if applicable, expert witness fees and other litigation expenses Or, back pay, front pay from the date of judgment, differential pay, vacation credits, matching employment retirement credits and appropriate rate of pay assignment from September of 2006, liquidated damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest if applicable, expert witness fees and other litigation expenses plus all costs of these proceedings, and for such other legal

and equitable relief as the Court shall deem necessary and proper.

Dated this 15th day of August, 2007.

Respectfully Submitted,

GEORGE C. AUCOIN
Louisiana Bar No. 24747
Law Offices of George C. Aucoin, APLC
616 E. Boston Street
Covington, LA 70433
Telephone: (985) 727-2263
Facsimile: (985) 951-7490
*COUNSEL FOR PLAINTIFF,*
*CHAD LEROY LISDAHL*